**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Email: cklee@leelitigation.com
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DANIELLE GADOCI,
*on behalf of herself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

828 / 850 MADISON AVENUE MEMBERS CLUB, INC,
d/b/a/ MAXIME'S
and
ANDREW THOMAS WEST,

Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff DANIELLE GADOCI (hereinafter, "Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants 828 / 850 MADISON AVENUE MEMBERS CLUB, INC, (the "Corporate Defendant") and ANDREW THOMAS WEST, ("Individual Defendants"), (together with "Corporate Defendant," "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from Defendants: (i) unpaid wages, including overtime, due to an invalid tip credit; (ii) illegally retained

gratuities; (iii) unpaid wages, including overtime compensation, due to time-shaving; (iv) liquidated damages; and (v) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (i) unpaid wages, due to an invalid tip credit policy; (ii) illegally retained gratuities; (iii) unpaid wages, including overtime compensation, due to time-shaving; (iv) unpaid spread of hours premiums; (v) unpaid accrued paid time off ("PTO"); (vi) statutory penalties; and (vii) attorneys' fees and costs.

3. Plaintiff additionally alleges that Defendants unlawfully retaliated against her, in violation of the FLSA and NYLL due to Plaintiff's wage complaints, including complaints regarding the Defendants' tip pool allocations and lawful request to see the tips sheets, and seeks to recover from Defendants: (i) compensatory damages, (ii) punitive damages, and (iii) attorneys' fees and costs.

4. Plaintiff further alleges, on an individual basis, that Defendants discriminated against her on the basis of her sex and gender, in violation of the New York State Human Rights Law, New York Executive Law § 296 *et seq*. ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), and brings this action against Defendants to recover: (i) back pay; (ii) front pay; (iii) compensatory damages; (iv) punitive damages; and (v) attorneys' fees and costs.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

7. Defendants have not informed Plaintiff of any arbitration agreement applicable to Plaintiff and/or the Class Members (as defined below). In any event, to the extent Defendants contend that any such arbitration agreement applies to this action, the agreement is unenforceable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA"), because this case relates to Plaintiff's sexual harassment dispute. Courts in this District have held that, where the EFAA applies, it renders a pre-dispute arbitration agreement unenforceable as to the entire case, rather than merely the claims alleging sexual harassment. See, e.g., *Mera v. S.A. Hosp. Grp., LLC*, 2025 U.S. Dist. LEXIS 586918, at *19–20 (S.D.N.Y. Nov. 14, 2025) (collecting cases and observing that courts in this District have "almost uniformly" held that the EFAA invalidates pre-dispute arbitration agreements as to a plaintiff's entire case); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 180 (S.D.N.Y. 2023) (holding that the EFAA "blocks arbitration of the entire case, not just the sexual harassment claims"); *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 532 (S.D.N.Y. 2024) (holding that, where the EFAA applies, an arbitration agreement is unenforceable with respect to the entire case).

## PARTIES

8. At all relevant times herein, Plaintiff was and is a resident of Westchester County, New York.

9. Defendant 828 / 850 MADISON AVENUE MEMBERS CLUB, INC (which does business as "Maxime's Club") is a high-end, multi-level private members' club and hospitality establishment on Manhattan's Upper East Side, offering exclusive dining, lounge, and entertainment services to its registered members and invited guests.

10. Corporate Defendant, 828 / 850 MADISON AVENUE MEMBERS CLUB, INC, is a domestic corporation organized under the laws of New York, with a principal place of business

located at 848 Madison Avenue, New York, NY 10021.

11. Individual Defendant ANDREW THOMAS WEST is a principal of Corporate Defendant and has operational control of Corporate Defendant. Individual Defendant ANDREW THOMAS WEST exercises the power to, and also delegates to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant ANDREW THOMAS WEST has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant ANDREW THOMAS WEST additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant ANDREW THOMAS WEST ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendant is operating efficiently and profitably.

12. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

13. At all relevant times, Plaintiff was Defendants' employee within the meaning of NYLL §§ 2 and 651. At all relevant times, Defendants were Plaintiff's employers within the meaning of NYLL §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

14. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including, but not limited to, servers, bartenders, runners, bussers, hosts, barbacks , captains, line cooks, and dishwashers, among others, employed by Defendants on or after the date that is 6 years before the filing of this Complaint ("FLSA Collective Plaintiffs").

15. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper tips due to a policy of illegally retaining tips, as well as a refusal to pay them for all hours worked due to time-shaving. Plaintiff's claims stated herein are essentially the same as those of FLSA Collective Plaintiffs. Further, with respect to tipped employees, Defendants were not entitled to take any tip credits under the FLSA, or to compensate Plaintiff and FLSA Collective Plaintiffs at a sub-minimum wage hourly rate, because they improperly retained gratuities, and failed to satisfy all statutory requirements for taking a tip credit.

16. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

17. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt current and former non-exempt employees, including, but not limited to, servers, bartenders, runners, bussers, hosts, barbacks captains, line cooks, and dishwashers, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

18. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

19. The proposed Class is so numerous that a joinder of all Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty Members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

20. Plaintiff's claims are typical of those claims that could be alleged by any Member of the Class, and the relief sought is typical of the relief that would be sought by each Member of the Class in separate actions. All the Class Members were subject to the same corporate practices

of Defendants of: (i) unpaid wages, including overtime compensation, due to time-shaving; (ii) failing to pay spread of hours premium; (iii) unpaid accrued PTO; (iv) failing to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law; and (v) failing to provide accurate proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

21. With regard to Plaintiff and the Tipped Subclass, they are also subject to the same corporate practices of Defendants, as alleged herein, of (1) improper tip credit deductions, and (2) improper tip retention. Defendants failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under NYLL. Plaintiff and the Tipped Subclass similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) caused tipped employees to in non-tipped duties for more than 30 consecutive minutes; (iv) illegally retained tips; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

22. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

23. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former

employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

i. Whether Defendants employed Plaintiff and the Class within the meaning of New York Labor Law;

ii. What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and Class Members;

iii. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

iv. Whether Defendants paid Plaintiff and Class Members the proper compensation for all the hours worked under the NYLL;

v. Whether Defendants properly compensated Plaintiff and the Tipped Subclass the proper minimum wage under the NYLL;

vi. Whether Defendants properly provided notice to Plaintiff and the Tipped Subclass that Defendants were taking a tip credit;

vii. Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

viii. Whether employees actually consumed the credited meals provided by Defendants;

ix. Whether Defendants paid Plaintiff and Class Members spread- of-hours premiums for days worked longer than ten hours;

x. Whether Defendants provided proper tip credit notice to Plaintiff and the Tipped Subclass at hiring and annually thereafter;

xi. Whether Defendants illegally retained tips from Plaintiff and the Tipped Subclass Members;

xii. Whether Defendants operated their business with a policy of failing to pay Plaintiff and the Class Members for all hours worked, due to time-shaving;

xiii. Whether Defendants provided proper wage statements informing the Plaintiff and Tipped Subclass Members of the amount of tip credit taken for each payment period and their proper overtime rate of compensation, as required under the NYLL;

xiv. Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to Plaintiff and Class Members, per requirements of NYLL; and

xv. Whether Defendants provided Plaintiff and Class Members proper wage statements with each payment of wages, as required under NYLL.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

26. On or about March 3, 2025, Plaintiff was hired by Defendants to work as a captain for Defendants' members-only club called Maxime's, located at 848 Madison Avenue, New York, NY 10021. Plaintiff was employed by Defendants until on or about June 9, 2026.

27. Throughout her employment, Plaintiff was paid at a tip credit rate of $11.35 per hour. FLSA Collective Plaintiffs and Class Members were compensated at similar wage rates.

28. At all relevant times, Plaintiff was regularly scheduled to work five (5) days per week from 6:30 p.m. to 3:00 a.m. or 4:00 a.m., for a total of eight and a half (8.5) to nine and a half (9.5) hours per day and forty two and a half (42.5) to forty seven and a half (47.5) hours per week. Despite Plaintiff's title of "captain," she spent 95% of her time serving customers and doing side work rather than supervising front-of-house staff.

*Unpaid Gratuities, due to Tip Retention*

29. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were deprived of their lawfully earned gratuities, due to Defendants' tip retention.

30. Throughout Plaintiff's employment, she would work private events that the club hosted. However, there was no breakdown of the gratuity money from these events available to view. None of the employees knew where this gratuity money went. One night, Louis Vuitton had a multimillion dollar private event at the club. Plaintiff observed that the event attendees left a

large amount in tips, yet these tips were not distributed to employees. In fact, their checks for that week showed that they were being paid less than they would in a normal workweek. Employees also never had access to any of the tip records Defendants kept. FLSA Collective Plaintiffs and Class Members were similarly deprived of tips due to this illegal policy.

31. Further, for higher end, pricier, events, Defendants would switch their payment and tip-out structure completely without notice, and pay Plaintiff, tipped FLSA Collective Plaintiffs, and Tipped Subclass at an hourly rate without tips, and retained all tips from these events for themselves. However, in these instances, Defendants never provided any notice to their clients that the entirety of these gratuities would be retained by Defendants and none of the gratuities would be provided to the service employees.

32. Further, to the extent that Defendant retained any portion of customer payments by improperly labeling a line item on an invoice or bill as a "service charge," "administrative fee," or other similar fee, such charges failed to comply with the strict disclosure and notice requirements of 12 NYCRR § 146-2.18 and § 146-2.19. Consequently, because these charges would be understood by a reasonable customer to be tips, the retained funds constitute misappropriated gratuities in direct violation of the FLSA and New York Labor Law § 196-d.

33. As a result of Defendants' failure to provide this information, Defendants' clients believed that their gratuities would go to the service employees, including Plaintiff.

34. Defendants knowingly and willfully operated their business with a policy and practice of retaining tips earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and NYLL.

*Unpaid Wages, due to an Invalid Tip Credit*

35. At all relevant times, Defendants improperly deducted tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages for all hours worked.

36. Defendants were not entitled to claim any tip credit allowance from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages under the FLSA and the NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) illegally retained tips; (iii) deducted tip credits for all hours worked despite having caused them to engage in non-tipped duties for hours exceeding twenty percent of the total hours worked each workweek, (iv) deducted a tip credit for all hours worked despite having caused them to engage in non-tipped duties for more than 20% of the work they performed each week, (v) illegally retained tips from them, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

37. Throughout Plaintiff's employment, Plaintiff never received any written or verbal notice from Defendants that Defendants were claiming a tip credit on her compensation. Defendants never told Plaintiff that they were deducting tip credits from her wages, nor did she ever receive proper notice as to the amount of tip credit allowances Defendants deducted for each payment period during her employment. Defendants' failure to provide proper tip credit notice renders Defendants' claimed tip credit invalid under the FLSA and the NYLL. FLSA Collective Plaintiffs and Class Members similarly did not receive notice that Defendants were deducting a tip credit from their wages.

38. Further, as discussed above, at all relevant times, Defendants illegally retained tips from Plaintiff, FLSA Collective Plaintiffs and Class Members, particularly during private events that the club hosted which often resulted in a large amount of tips. Plaintiff, FLSA Collective

Plaintiffs and Class Members were never allowed to look at the tip sheet that Defendants kept. Defendants' illegal tip retention provides an independent basis upon which Defendants' tip credit is rendered invalid under the FLSA and the NYLL.

39. Finally, throughout Plaintiff's employment, Defendants systematically required Plaintiffs, FLSA Collective Plaintiffs, and other Class Members to perform non-tipped duties for extended periods. Defendants often required Plaintiff to spend her the majority of even the entire shift polishing glasses. Every day, she was also required to spend the first hour of her shift cleaning candles, resetting the dining room, counting table mats, polishing the silver and glass, and restocking the bar. She had to spend an additional hour at the end of her shift performing non-tipped closing duties. Plaintiff was also required to do side work during service. Such side work amounted to more than 20% of her total shifts. Defendants also required FLSA Collective Plaintiffs and Class Members to engage in similar non-tipped work for an excessive amount of time.

40. At all relevant times, Defendants knowingly and willfully operated their business with invalid tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages.

*Unpaid Wages, due to Timeshaving*

41. At all relevant times, Plaintiff and other employees were only paid for their scheduled hours. On a daily basis, Defendants required Plaintiff to stay at work after the official end of her scheduled shift. As a result of this practice, Plaintiff, FLSA Collective Plaintiffs, and Class Members were time-shaved around two (2) hours for each week they worked.

42. In or around January 2026, when the club started using a new timekeeping app to track employees' hours, Defendants began requiring Plaintiff to clock out for a thirty (30) minute lunch break. However, Plaintiff would have to work through her lunch. Her lunch break was

interrupted daily. FLSA Collective Plaintiffs and Class Members suffered the same harm and were daily time-shaved an additional half (.5) hour per shift for each shift they worked.

43. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours worked, due to time-shaving, in violation of the FLSA and NYLL.

*Plaintiff's Unpaid Spread of Hours Premiums Claim*

44. At all relevant times, Defendants failed to compensate all spread of hours premiums to Plaintiff and Class Members for all workdays with a spread of ten or more hours, in violation of the NYLL.

45. Plaintiff usually started working fifteen (15) minutes prior to her shift and was required to stay fifteen (15) to thirty (30) minutes post-shift. Thus, she always worked days with a spread of ten or more hours, Defendants always failed to compensate spread of hours premiums to Plaintiff for such days.

46. Defendants similarly failed to pay spread of hours premiums to Class Members for their workdays with a spread of ten or more hours.

*Plaintiff's Unpaid Accrued PTO Claim*

47. At all relevant times, Defendants failed to pay accrued PTO to Plaintiff and Class Members, in violation of the NYLL.

48. Defendants failed to compensate Plaintiff's accrued PTO when her employment was terminated. As a result, Plaintiff has not been paid for an accrued forty (40) hours of PTO as required under the NYLL. Class Members were similarly not paid by Defendants for PTO they accrued. Plaintiff and Class Members were never made aware by Defendants that they would not be paid for their accrued PTO.

*WTPA Claims*

49. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

50. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

51. New York courts continue to find sufficient standing to support these claims. One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

52. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being

underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

53. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

54. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time-shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information,

Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

55. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

56. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff with wage notices and accurate wage statements, in violation of the NYLL.

*Individual Sexual Harassment Claims*

57. Throughout Plaintiff's employment, she was subjected to unwelcome sexual advances and gender-based harassment, creating a hostile, offensive, and discriminatory working environment. After Plaintiff rejected Chef Hideaki's repeated requests to go on a date, he subjected her to humiliating, hostile, and intimidating treatment because of her gender and because she rejected his sexual advances. This conduct created a discriminatory, hostile, offensive, and abusive working environment in violation of the NYSHRL and NYCHRL.

58. At all relevant times, Chef Hideaki exercised supervisory and managerial authority over Plaintiff's work, including directing her job duties and interacting with her in the course of her employment. Defendants are liable for Chef Hideaki's discriminatory conduct because it was committed by a managerial or supervisory employee acting within the scope of his authority and in connection with Plaintiff's employment.

59. During her employment, Chef Hideaki asked Plaintiff to go on a on a date with him. Plaintiff declined. Despite her rejection, Chef Hideaki continued to pursue Plaintiff and asked her out on two additional occasions during her employment. On multiple occasions while Plaintiff was doing side work in the kitchen, such as polishing, Chef Hideaki approached her and again asked

her to go on a date. These repeated and unwelcome advances made Plaintiff uncomfortable.

60. After Plaintiff rejected Chef Hideaki's advances, his demeanor toward her changed markedly. He became aggressive, hostile, and began treating her like she was unintelligent or incompetent. One day, Chef Hideaki introduced a new dish that had a Japanese name. Plaintiff looked up the dish to learn more about it, and the chef passed by while she did so. Chef Hideaki then called a meeting to discuss the dish and put Plaintiff on the spot by saying, "Danielle, since you already know everything about this dish, please tell everyone about it." Plaintiff told them what she learned about the dish and the chef responded, "No! Completely wrong! See, that's why you should trust me more than Google!". This exchange occurred in front of other staff. This made Plaintiff feel very uncomfortable.

61. Another time, a guest requested an allergy modification on a dish they ordered, which is extremely common at the restaurant. When Plaintiff informed Chef Hideaki about the modification, he became visibly angry, turned bright red, and started yelling at Plaintiff in front of both restaurant guests and staff in the restaurant's open kitchen. The next day, Chef Hideaki had the manager apologize to Plaintiff on his behalf, implicitly acknowledging that his conduct was inappropriate.

62. Chef Hideaki's repeated unwelcome romantic advances, followed by his hostility, public ridicule, and verbal abuse after Plaintiff rejected those advances, caused Plaintiff to be treated less well than other employees because of her sex. As a result of the chef's discriminatory and hostile conduct, Plaintiff suffered severe emotional distress. She began to feel scared and stressed at work and could not eat or sleep well. She also developed panic attacks due to work-related stress. The pervasive sexual harassment and the hostile work environment took a significant toll on Plaintiff's mental health and well-being.

<u>*Plaintiff's Individual Retaliation Claim*</u>

63. Throughout Plaintiff's employment, Defendants repeatedly failed to provide Plaintiff and other employees with tip records or tip sheets reflecting the amount of tips earned and the manner in which those tips were distributed. Although Defendants kept the tip sheets behind the coat check station, employees who requested to review them, or even expressed an interest in doing so, were routinely disciplined or written up on pretextual grounds in an effort to discourage employees from exercising their rights under the NYLL.

64. Plaintiff repeatedly questioned the significant discrepancies between the tips and gratuities she observed being collected from customers and the amounts she actually received. Plaintiff also repeatedly requested to review the tip sheets and other records reflecting the distribution of gratuities. Defendants were aware of Plaintiff's complaints and requests but ignored them and refused to provide the tip records they were required to maintain and make available by law.

65. Plaintiff's repeated complaints and requests concerning Defendants' tip distribution practices and tip records constituted protected activity under the NYLL and the FLSA. Shortly after Plaintiff engaged in this protected activity, Defendants terminated her employment, purportedly for a pattern of conduct inconsistent with company standards. This stated reason was false and pretextual. Plaintiff was terminated because she repeatedly questioned Defendants' tip practices and exercised her rights under the NYLL and the FLSA.

66. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

67. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

68. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

69. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

70. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

71. At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them proper wages in the lawful amount for hours worked because Defendants were not entitled to claim any tip credits.

72. At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their tips due to illegally retaining tips, in violation of the FLSA.

73. At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs all their owed wages, including overtime wages, due to time-shaving.

74. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

75. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper tips due to illegally retained tips when Defendants knew or should have known such was due.

76. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

77. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid tips, due to illegally retaining tips.

78. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

79. Plaintiff realleges and incorporates by reference all the above allegations of this complaint as fully set forth herein.

80. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

81. At all relevant times, Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them the lawful minimum wage for all hours worked. As factually described above, Defendants were not entitled to claim any tip credits from Plaintiff's and Class Members' wages under the NYLL.

82. At all relevant times, Defendants knowingly and willfully violated Plaintiffs' and Class Members' rights by subjecting them to an improper policy and practice in which they were required to engage in non-tipped work for more than 20% of each of their workdays.

83. At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay Plaintiff and Class Members their tips due to illegally retaining tips, in violation of the NYLL.

84. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for shifts worked in excess of ten (10) hours, in violation of the NYLL.

85. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their accrued PTO, in violation of the NYLL.

86. At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay Plaintiff and Class Members all their owed wages, including overtime wages, due to time-shaving.

87. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff with proper wage and hour notices, at date of hiring and annually thereafter, in violation of NYLL.

88. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff with proper wage statements, in violation of NYLL.

89. Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid minimum wages, invalid tip credit, illegally retained gratuities, unpaid wages due to time shaving, unpaid accrued PTO, statutory penalties, attorneys' fees, and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**

**DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**
**(New York State Executive Law § 296 et seq.)**

90. Plaintiff realleges and incorporates by reference all the above allegations of this complaint as fully set forth herein.

91. The New York State Human Rights Law ("NYSHRL") provides: "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." New York State Executive Law § 296(1)(a).

92. Plaintiff was an employee and a qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

93. Defendants violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law §296, by engaging in discriminatory employment practices and subjecting her to a hostile work environment based on her sex and gender. This hostile work environment was created and fostered through the pervasive and regular sexual harassment from her manager in the form of comments and behavior, including unwanted sexual advances and

physical sexual contact, directed towards Plaintiff.

94. Here, Plaintiff was discriminated against on the basis of her sex and gender and was subjected to severe and pervasive sexual harassment during her employment. The hostile work environment was sufficiently pervasive and sever to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment.

95. Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's protected rights under the NYSHRL.

96. Due to Defendants' violations under the NYSHRL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## COUNT IV

## DISCRIMINATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

(On behalf of Plaintiff only)

97. Plaintiff realleges and incorporates all the above allegations, pursued on an individual basis, of this Complaint as fully set forth herein.

98. Plaintiff realleges and incorporates all the above allegations, pursued on an individual basis, of this Complaint as fully set forth herein.

99. The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment providing that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

The New York City Administrative Code § 8-107(1).

100. At all relevant times, Defendants employed at least four (4) persons. Plaintiff DANIELLE GADOCI was an employee and qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

101. Here, Plaintiff was discriminated against on the basis of her sex and gender and faced consequences in her employment environment as a result. The hostile work environment was sufficiently pervasive and severe to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment.

102. Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's protected rights under the NYCHRL.

103. As a result of Defendants' unlawful employment practices, Plaintiff sustained injury in the form of economic damages, including back pay, and costs of bringing this action.

104. Due to Defendants' violation under the NYCHRL, Plaintiff is entitled to recover from Defendants: (1) compensatory damages; (2) punitive damages; and (3) attorneys' fees and costs.

## COUNT V

## RETALIATION UNDER THE NEW YORK LABOR LAW AND THE FAIR LABOR STANDARDS ACT

(On behalf of Plaintiff only)

105. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

106. At all relevant times, Plaintiff was an employee, and Defendants were employers, within the meaning of the NYLL and the FLSA.

107. Plaintiff engaged in protected activity under the NYLL and the FLSA by repeatedly

complaining about Defendants' unlawful tip distribution practices, questioning discrepancies in the tips and gratuities she received, and requesting to review Defendants' tip records in order to ensure compliance with applicable wage-and-hour laws. Defendants were aware of Plaintiff's protected activity.

108. Shortly after Plaintiff engaged in this protected activity, Defendants terminated her employment under the purported reason of "a pattern of conduct inconsistent with company standards." Defendants' stated reason for Plaintiff's termination was false and pretextual. Rather, Defendants terminated Plaintiff because she asserted her rights under the NYLL and the FLSA and opposed practices that she reasonably believed violated those statutes.

109. By terminating Plaintiff because she engaged in protected activity, Defendants unlawfully retaliated against Plaintiff in violation of Section 215 of the NYLL and the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3).

110. Defendants' retaliatory conduct was willful and intentional and demonstrated a reckless disregard for Plaintiff's rights under the NYLL and the FLSA.

111. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered damages, including but not limited to lost wages and benefits, emotional distress, and other compensatory damages. Plaintiff seeks all remedies available under the NYLL and the FLSA, including back pay, front pay, liquidated damages, compensatory damages, punitive damages, attorneys' fees, costs, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. Disgorgement of illegally retained gratuities, due under the FLSA and NYLL;

d. An award of unpaid wages, due to invalid tip credit deductions under the NYLL;

e. An award of unpaid wages, including overtime, due to a policy of time-shaving, due under the FLSA and NYLL;

f. An award of unpaid spread of hours premiums, due under the NYLL;

g. An award of unpaid accrued PTO, due under the NYLL;

h. An award of all applicable damages under the NYSHRL and NYCHRL due to sexual harassment, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs;

i. An award of compensatory damages, punitive damages, and damages for egregious emotional distress as a result of Defendants' retaliatory conduct, due under the FLSA and the NYLL;

j. An award of liquidated damages as a result of Defendants' willful violations of the NYLL;

k. An award of statutory penalties due to Defendants' willful violations of the WTPA;

l. An award of prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

m. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n. Designation of this action as a class action pursuant to F.R.C.P. 23;

o. Designation of Plaintiff as Representative of the Class; and

p. Such other and further legal and equitable relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all causes of action and issues so triable as of right by jury.

Date: November 25, 2026
New York, New York

Respectfully submitted,

By: /s/ *C.K. Lee*

C.K. Lee, Esq. (CL 4086)

**LEE LITIGATION GROUP, PLLC**
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Email: cklee@leelitigation.com
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*